**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **United States of America,** )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>**Victor Manuel Canedo-Reyna,** )<br>)<br>**Defendant.** )<br>_____ ) | **No. CR-08-0040-TUC-FRZ (CRP)**<br><br>**REPORT AND RECOMMENDATION** |

Pending before this Court is Defendant's Motion to Dismiss Indictment. (Doc 9). Defendant is charged by Indictment with illegal reentry after deportation. 8 U.S.C. § 1326. In his Motion to Dismiss, Defendant collaterally attacks his underlying deportation order, issued October 29, 1985, as unlawful. Defendant premises his argument on alleged procedural flaws in his initial deportation hearing. Specifically, Defendant contends the immigration court failed to notify him of the deportation hearing, and proceeded in absentia when Defendant failed to appear because he was in state custody at the time. Defendant concludes this procedural flaw resulted in prejudice because Defendant had a plausible case for relief under § 212(c) of the Immigration and Nationality Act ("INA"). The Government opposes the Motion to Dismiss, arguing that Defendant failed to exhaust all administrative remedies available, and that the 1985 deportation order was not fundamentally unfair because

1  Defendant received proper, although not actual, notice of the hearing. (Doc 15). For the
2  reasons outlined below, the Magistrate Judge recommends that the District Judge, after his
3  independent review and analysis, deny Defendant's Motion to Dismiss.

4  **I. FACTUAL AND PROCEDURAL HISTORY**

5  Defendant entered the United States as a legal immigrant from Mexico on May 3,
6  1967. (Doc 9, Attachment A, p 1). After entry, Defendant lived in the United States among
7  his family, which included his mother and his six siblings. (Doc 9, p 5). In 1983, Defendant
8  was convicted on charges of theft. Defendant committed theft of over $100 but under $250
9  on or about July 15, 1983. (Doc 9, Attachment A, p 2). In an unrelated and separate incident,
10 he committed theft of over $250 but under $500 on July 20, 1983. (Doc 9, Attachment A, p
11 2). Pursuant to these convictions, the Immigration and Naturalization Service ("INS")
12 served an Order to Show Cause ("OSC") on Defendant on February 19, 1985, initiating
13 deportation proceedings against him. (Doc 9, Attachment A, p 1).

14 Defendant was absent from his deportation hearing in Tucson, Arizona on August 13,
15 1985, but was represented by counsel Bertram Polis. (Doc 9, Attachment B). Defendant
16 could not attend the hearing because he was in state custody at the time. (Doc 9, Attachment
17 B, p 2). At that hearing, Defendant's counsel was given oral notice that the matter was to be
18 continued until October 29, 1985. (Doc 9, Attachment B, p 2). Neither Defendant nor his
19 counsel appeared at the October 29, 1985 hearing. (Doc 9, Attachment C). Accordingly, the
20 presiding Immigration Judge Irene Weiss entered an in absentia order for deportation of
21 Defendant. (Doc 9, Attachment C, p 3). The judge entered the order because Defendant's
22 two convictions for theft were crimes of moral turpitude for which Defendant could be
23 deported. (Doc 9, Attachment C, p 3).

24 Because both Defendant and Mr. Polis were absent from the deportation proceeding,
25 Judge Weiss concluded that she would consider no form of relief. (Doc 9, Attachment C, p
26 3). Though the immigration court sent correspondence to Defendant intending to notify him
27 of the deportation order and the procedure for appeal, the Court subsequently received return
28 mail indicating that the address to which it had mailed correspondence to Defendant was

1  vacant. (Doc 9, Attachment F).

2  On November 7, 1985 Mr. Polis filed an appeal to the Board of Immigration Appeals
3  of the in absentia order entered against Defendant. (Doc 9, Attachment G).  Mr. Polis filed
4  a motion for extension of time to file a brief for the appeal on January 23, 1986. (Doc 9,
5  Attachment H).  However, on March 5, 1986, Judge Weiss sent correspondence to Mr. Polis
6  confirming Mr. Polis withdrew the appeal. (Doc 9, Attachment I).   Defendant alleges that
7  he never hired Mr. Polis to represent him in immigration court, and that he never requested
8  that Mr. Polis withdraw the appeal of his deportation order.  (Doc 9, Attachment J).

9  Defendant was not deported pursuant to the 1985 deportation order until March 12,
10 1992. (Doc 15, Attachment 2).  On August 6, 2003, Defendant was removed from the United
11 States for having illegally reentered the country. (Doc 15, Attachment 3).  Following this
12 removal, Defendant reentered illegally once again, and on April 18, 2006 was convicted of
13 illegal reentry under 8 U.S.C. § 1325. (Doc 15, p 4).  On May 3, 2006 the government issued
14 a final administrative removal order which stated that Defendant had no relief available
15 because he had been convicted of an aggravated felony. (Doc 9, Attachment K).

16 Following Defendant's illegal reentry charge by indictment pursuant to 8 U.S.C. §
17 1326 on January 9, 2008, Defendant filed a Motion to Dismiss Indictment.  (Doc 9).

18 **II. DISCUSSION**

19 Defendant seeks dismissal of the illegal reentry charge, arguing that his previous
20 deportation was unlawful and unconstitutional.  Pursuant to 8 U.S.C. § 1326(d), in a
21 collateral attack on an underlying deportation order, a defendant must prove three separate
22 requirements: (1) that he exhausted any administrative remedies available to seek relief
23 against the order, (2) that the deportation proceedings at which the order was issued
24 improperly deprived him of the opportunity for judicial review, and (3) that the entry of the
25 order was fundamentally unfair.  8 U.S.C. § 1326(d).  As set out in the sections below, the
26 Defendant did not exhaust his administrative remedies as he may still file a motion to reopen
27 before the immigration court.  Thus, Defendant's Motion to Dismiss should be denied.
28 Should the District Judge disagree and conclude that Defendant has exhausted all

administrative remedies available, Defendant's Motion to Dismiss should be granted because Defendant was deprived of an opportunity for judicial review, and the entry of the deportation order on October 29, 1985 was fundamentally unfair.

**A. Defendant Did Not Exhaust All Available Administrative Remedies**

To collaterally attack an underlying deportation order, Defendant must show he exhausted all administrative remedies available to contest that order. 8 U.S.C. § 1326(d). A defendant may contest an immigration decision made by an immigration judge by filing a motion to reconsider and/or a motion to reopen. 8 C.F.R. § 1003.23. Defendant in this case did not file a motion to reconsider or a motion to reopen his immigration case. To reach a conclusion on whether Defendant exhausted his administrative remedies, this Court must determine if Defendant could go back to the immigration courts at this point in time and file either a motion to reconsider or a motion to reopen. If he could file either of these motions, he failed to exhaust his administrative remedies.

For its part, the Government argues Defendant could go back to the immigration court and file a motion to reopen. The Government cites two Ninth Circuit cases supporting its position. Defendant counters that under current federal regulation, he is not permitted to file a motion to reopen and that such a motion would be rejected by the immigration courts. Having reviewed the briefing on this issue, the Court concludes Defendant could go back to the immigration courts and file a motion to reopen.

The Code of Federal Regulations governs when and how a Defendant may file a motion to reopen. A party may file only one motion to reopen and one motion to reconsider. 8 C.F.R. § 1003.23(b)(1). With a few exceptions, an individual who is the subject of a deportation proceeding may not file a motion to reconsider or a motion to reopen subsequent to his or her departure from the United States. *Id.* A motion to reconsider must be filed within 30 days of a final administrative removal or deportation order, or on or before July 31, 1996, whichever is later. *Id.* A motion to reopen must be filed within 90 days of the date of entry of a final administrative order of removal or deportation, or on or before September 30, 1996, whichever is later. *Id.* An exception to the above rules, however, applies to this

1 case. If an order is entered *in absentia* in a deportation proceeding, it may be rescinded upon
2 a motion to reopen *filed at any time* if the alien demonstrates that he or she did not receive
3 notice, or if the alien demonstrates that he or she was in federal or state custody and the
4 failure to appear was through no fault of the alien. *Id.* at (b)(4)(iii)(2) (*emphasis added*).[1]

5      In the case before this Court, Defendant contends, and the Government does not
6 contest, that Defendant failed to appear at his 1985 deportation proceeding because he was
7 in state custody at the time. Therefore, the exception to the filing deadline applies, and
8 Defendant can file a motion to reopen before an immigration judge at any time.

9      In addition to the regulations, Ninth Circuit case law supports a conclusion that
10 Defendant can still file a motion to reopen and has, therefore, failed to exhaust his
11 administrative remedies. According to the Ninth Circuit, when an alien departs the country
12 pursuant to an unlawful deportation order, the alien may move to reopen the case before an
13 administrative body. *Mendez v. INS*, 563 F.2d 956 (9th Cir.1977); *Wiedesperg v. INS*, 896
14 F.2d 1179 (9th Cir.1990) (finding that a deportation was unlawful because it was predicated
15 on a vacated conviction, thus defendant could still move to reopen his case). Based on these
16 cases, where a departure is not legally executed because a deportation proceeding was
17 procedurally defective, a defendant's departure from the United States may not serve as a bar
18 to his motion to reopen before an administrative body. In this case, Defendant's challenge
19 to his underlying deportation order alleges that his 1992 departure was not legally executed,
20 due to the lack of notice of his deportation proceeding and the prejudice that resulted.
21 Accordingly, Defendant is permitted to make a motion to reopen with the immigration courts.

22      In arguendo, if the determinations in *Mendez* and *Wiedesperg* are not applicable to the
23 case before this court, Defendant may still file a motion to reopen. In 2007, the Ninth Circuit
24 held a defendant could move to reopen a case when his departure and subsequent motion to
25 reopen occur after the conclusion of the removal proceedings. *Lin v. Gonzalez*, 473 F.3d 979,

---

27,28 [1]The same is true for an order of removal entered in absentia, where alien did not receive notice in accordance with sections 239(a)(1) or (2) of the INA, or where the alien demonstrates that he or she was in federal or state custody and the failure to appear was through no fault of the alien. 8 C.F.R. § 1003.23(b)(4)(ii).

- 5 -

1  982 (9th Cir.2007). The departure restriction in 8 C.F.R. § 1003.23(b)(1) thus only applies
2  to individuals who leave the United States while they are currently the subject of removal
3  proceedings. *Id*. Because Defendant departed the United States in 1992, well after the
4  conclusion of his deportation proceedings, according to the *Lin* decision he may still move
5  to reopen before the immigration court.

6  Defendant may file a motion to reopen his case before the administrative body that
7  previously issued a ruling in his deportation proceeding. Because Defendant may still file
8  a motion to reopen with the immigration courts, Defendant has not exhausted all of his
9  administrative remedies. Thus, Defendant does not satisfy the first requirement of § 1326(d)
10  and his Motion to Dismiss should be denied.

11  **B. Deprivation of Judicial Review**

12  If the District Judge determines Defendant did satisfy the first requirement of §
13  1326(d), Defendant must then show that he was deprived of judicial review during
14  deportation proceedings. 8 U.S.C. § 1326(d). In the case pending before this Court, the
15  Government argues that Defendant was not deprived of judicial review. The Government
16  reasons Defendant continues to have access to judicial review because if he files a motion
17  to reopen that is denied by the immigration courts, he may still challenge the denial of his
18  motion to reopen in federal court. *United States v. Hinojosa-Perez*, 206 F.3d 832, 836 (9th
19  Cir.2000).

20  The Court disagrees with the Government's position on this point. Though the
21  immigration court and the Government knew that Defendant failed to appear at his October
22  29, 1985 deportation hearing because he was in state custody at the time, the immigration
23  judge proceeded and entered an in absentia deportation order against Defendant. Defendant
24  was deprived of judicial review when deportation proceedings were conducted without his
25  presence while he was in state custody. Because Defendant was not present at the October
26  29, 1985 proceedings, and presumably had no notice of the proceedings, he was accordingly
27  given no official notice of his right to appeal. Without notice of his right to appeal, Defendant
28  was deprived of judicial review. Accordingly, Defendant satisfies the second requirement

1 of § 1326(d).

## C. Entry of Deportation Fundamentally Unfair

If the District Judge concludes Defendant satisfies the first two requirements of § 1326(d), Defendant must show that the entry of deportation order was fundamentally unfair. 8 U.S.C. § 1326(d). "An underlying removal order is 'fundamentally unfair' if: (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.'" *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir.2004) (*brackets and citation omitted*). Defendant argues the immigration court violated his due process rights when it failed to notify him of his deportation hearing, and subsequently Defendant was not present to request the § 212(c) relief for which he was eligible. Defendant argues he suffered prejudice as a result. The Government concedes that Defendant may have been eligible for § 212(c) relief, but argues that there was no due process violation because Defendant received proper, if not actual, notice when the OSC was sent via registered mail to the last address Defendant submitted.

In order to establish prejudice as a result of a due process violation, a defendant need not prove that an immigration court would have otherwise granted him relief. Rather, it is enough for a defendant to "show that he had a 'plausible' ground for relief from deportation." *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir.2000) (*brackets and citation omitted*). The Defendant in the case before this court had a plausible ground for relief from deportation under § 212(c). Section 212(c) of the former INA provided that an immigrant may be granted relief from deportation if he could show seven years of unrelinquished domicile in the United States. 8 U.S.C. § 1182(c) (1985). Relief under § 212(c) is not granted indiscriminately; rather, a court uses discretion to either grant or deny § 212(c) relief based on the balance of positive and negative equities pertaining to a defendant. *Matter of Marin*, 16 I & N Dec. 581, 584 (BIA 1978). Favorable considerations include "family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and

- 7 -

1  family if deportation occurs, ... a history of employment, the existence of property or
2  business ties, [and] evidence of value and service to the community." *Id.* at 584-85.

3   Many facts support a conclusion that Defendant in the case before this Court had a
4  plausible ground for § 212(c) relief. Prior to the 1985 deportation proceeding, Defendant
5  was domiciled in the United States for over seven years. In addition, Defendant's mother and
6  six siblings were in the United States. Defendant lived in the United States from a young
7  age, and worked for a substantial period during his residency. Also, § 212(c) relief was
8  routinely granted at the time of Defendant's deportation. *See INS v. St. Cyr*, 533 U.S. 293,
9  296 (2001) (indicating that 51.5% of cases between 1989 and 1995 involving § 212(c) relief
10 concluded with the granting of relief). Finally, at the oral argument on Defendant's Motion
11 to Dismiss, Defendant introduced the expert testimony of Tarik Sultan. Mr. Sultan opined
12 that Defendant was eligible for relief from deportation under § 212(c) waiver and would
13 likely have been granted relief during his 1985 deportation proceeding had he been present
14 at that hearing to request it. (Doc 22, p 10). Mr. Sultan testified that he represented
15 numerous defendants who have been granted § 212(c) relief even though they were involved
16 in more serious crimes than Defendant's crimes of theft, including crimes of drug trafficking
17 and child molestation. (Doc 22, p 27-28). Based on his success securing relief for people
18 convicted of more serious crimes, and based on his knowledge of § 212(c) relief at time
19 Defendant was deported, Mr. Sultan testified that Defendant had a probable ground for §
20 212(c) relief.

21  The above considerations show that at the time of his deportation proceedings in 1985,
22 Defendant had a probable ground for relief under § 212(c). Had Defendant been present at
23 the proceeding on October 29, 1985, he would have presumably requested this relief. Thus
24 Defendant was prejudiced by his absence from the in absentia deportation proceedings. The
25 entry of deportation in 1985 was fundamentally unfair, and Defendant therefore satisfies the
26 third requirement of § 1326(d).

27 **III. RECOMMENDATION**

28  Because Defendant fails to satisfy the first requirement of § 1326(d), the Magistrate

1 | Judge recommends that the District Judge, after his independent review and analysis, deny
2 | Defendant's Motion to Dismiss Indictment. (Doc 9).
3 |     Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within
4 | ten days of being served with a copy of the Report and Recommendation. If objections are
5 | not timely filed, they may be deemed waived. The parties are advised that any objections
6 | filed are to be identified with the following case number: **cr-08-0040-FRZ**.
7 |     DATED this 3rd day of July, 2008.

*[signature]*

**CHARLES R. PYLE**
UNITED STATES MAGISTRATE JUDGE